UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| MICHAEL SMITH, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos: 3:02-cr-078 |
| | ) | 3:08-cv-502 |
| | ) | *Judge Phillips* |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## AMENDED MEMORANDUM

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Michael Smith[1] ("petitioner"). The government has filed its response to the motion and petitioner has filed his reply. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

I.  Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete

---

[1]This Memorandum is amended to correct the name of the petitioner in the body of the opinion. The Memorandum remains the same as the original in all other respects.

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.  Factual Background

Petitioner was a member of the Knoxville, Tennessee, branch of a crack gang known as the Vice Lords and was tried before a jury along with co-defendants Walter Williams and Allen Young. Petitioner was convicted of the following two counts of a 18-count second superseding indictment: conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture of substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one); and possession and discharge of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) (count twelve). He was originally sentenced to a term of imprisonment of 292 months on the conspiracy conviction and a consecutive term of 120 months on the firearm conviction, for a total effective sentence of 412 months.

Petitioner's convictions were affirmed on direct appeal, but the case was remanded for resentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Williams*, 158 F. App'x 651 (6th Cir. November 16, 2005). On remand, petitioner was sentenced to a term of imprisonment of 200 months on the conspiracy conviction and a consecutive term of 120 months on the firearm conviction, for a total effective sentence of 320 months. The sentence was affirmed. *United States v. Smith*, 239 F. App'x 162 (6th Cir. August 7), *cert. denied*, 552 U.S. 1082 (2007).

Petitioner's subsequent motion for sentence reduction pursuant to the amendment to the crack cocaine guideline was granted and his sentence was reduced to 280 months. [Criminal Action No. 3:02-cr-78, Court File No. 996, Order]. In support of his § 2255 motion, petitioner alleges three instances of ineffective assistance of counsel.

III.   Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970),

petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner first alleges that his attorney was ineffective for stating to the jury in opening statements that petitioner shot Terry Moore. On direct appeal, petitioner challenged the sufficiency of the evidence to support his convictions on both the drug conspiracy and the firearm charge. In considering the defendants' challenges to their convictions, the Sixth Circuit first briefly summarized the evidence presented at trial:

> Defendants were arrested in 2002 for their participation in a crack cocaine conspiracy linked to the Knoxville branch of the Vice Lords gang. The government launched an investigation in 2001 after residents of a housing project in Knoxville complained about the gang. After a former member turned informant, agents obtained authorization to set up video surveillance of the

4

gang's regular meeting place. Although Williams did not attend meetings because he was incarcerated, Young and Smith appeared in the resulting videotapes. In the course of its investigation, the government executed search warrants at the residences of both Young and Edward Howell, another member of the conspiracy. Drug trafficking equipment, cash, and firearms were recovered during these searches.

Numerous arrests resulted from these investigations. Pursuant to plea agreements, several defendants testified at trial. Jahmal Tory, who lived with Young, testified that he, Williams, John Cotner, and Vincent Brown founded the Knoxville branch of the Vice Lords in 1999 and sought to secure a crack cocaine monopoly in the area. As the gang grew, most members supported themselves by selling crack. Gang members on occasion pooled their money in order to purchase large quantities of crack from suppliers. Members attempted to buy cocaine from each other as much as possible to "keep the money in the Nation." The gang collected a stash of firearms, at least some of which were stored at Smith's residence.

Among other things, the gang's weekly meetings entailed the collection of dues. The undercover videotapes depicted gang members identifying themselves at meetings by their street aliases and their rank in the gang. They also discussed drug trafficking and acquisition of firearms. On one videotape, Smith suggested a new "pat down" security measure for the meeting place.

In recorded telephone conversations, Young and Williams talked about expanding their drug trafficking to other housing projects. Videotapes also showed that Tory asked Williams to sell drugs in North Carolina, and that members made an initial, failed attempt to do so.

Witnesses described four violent drug-related incidents involving the gang. First, Smith shot Terry Moore when gang members tried to collect a drug debt. Second, gang member Jedaryll Chandler attempted to shoot Brian Whitman for not paying his gang "dues." Third, Williams and Chandler committed an armed robbery of a cocaine supplier. Fourth, Edwin Hyman, and Young, tried to shoot David Benton for acting as an informant while Smith served as the "look out."

After Smith was jailed, a fellow inmate reported that Smith attempted to enlist the inmate to go find Moore and convince Moore to lie about the shooting at trial. Another inmate testified that Smith told him to testify that Smith did not sell drugs.

5

*United States v. Williams*, 158 F. App'x at 652-53.

With respect to petitioner specifically, the Court recounted the evidence against him as follows:

> Smith contends that the evidence was insufficient to support his conspiracy and firearm convictions. He concedes that he was part of a gang that distributed drugs, that he bought a small quantity of cocaine from the gang, and that he was caught on videotape discussing "pat down" procedures at the gang's headquarters. But he asserts that the evidence was insufficient to show that, even if he did sell some drugs, the sales were part of the drug-trafficking conspiracy. He also denies that he was involved in the discharge of a firearm, or that the firearm was discharged in connection with drug trafficking.
>
> In reviewing the sufficiency of the evidence, the court determines whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." To be found guilty on a charge of conspiracy to engage in drug trafficking, a defendant must be aware of the object of the conspiracy and voluntarily associate himself with its purpose.
>
> Mere presence is not enough to connect a person to a conspiracy. However, once the existence of a conspiracy was established, only slight evidence was needed to connect [defendant] to it, if there was sufficient evidence to establish the connection beyond a reasonable doubt.
>
> In our view, the evidence that defendant shot Terry Moore as part of an effort to collect a drug debt is sufficient to sustain both convictions. Two witnesses testified that Smith, Howell, and Brown discussed their intention to collect a debt from a drug-trafficking transaction on their way to meeting Moore. Thus, there was evidence that defendant was aware of the drug-trafficking conspiracy and voluntarily associated himself with the drug-trafficking objective. Although defendant questions the credibility of the witnesses, that credibility determination is left to the jury. Moreover, in addition to the facts admitted by defendant, there was also evidence that he served as the "look out" in a failed "hit" upon Benton for being an informant, and that he instructed a fellow inmate not to reveal that the shooting of Terry Moore was drug-related. In short, a rational trier of fact could have found

> beyond a reasonable doubt that defendant conspired to distribute fifty or more grams of cocaine.
>
> The evidence that defendant shot Moore supports the firearm charge as well. In order to be found guilty of the firearm charge, the weapon must facilitate or have the potential to facilitate a drug-trafficking offense. Since testimony showed that defendant shot Moore while collecting a debt for drug sales, the use of a weapon facilitated drug trafficking. The evidence is sufficient to sustain the jury's verdict.

*Id.* at 655-56 (quoting United States v. Avery, 128 F.3d 966, 971 (6th Cir.1997)) (internal citations omitted).

As the Sixth Circuit noted, the government presented witnesses who testified that petitioner shot Terry Moore. Thus, petitioner has not shown how he was prejudiced by his attorney's opening statement to that effect. In addition, the defense's theory was that petitioner, while a member of the Vice Lords gang, was not involved in a drug conspiracy and that the shooting was not committed as part of any drug conspiracy. Counsel's attempt to bolster that theory by admitting the shooting to the jury, while denying its relation to the conspiracy, was a trial strategy which this court will not second-guess. *See, e.g., Bentley v. Motley*, 248 F. App'x 713, 718 (6th Cir. 2007) (the court's "review of counsel's strategy and trial tactics should be 'highly deferential' and should avoid second-guessing") (quoting *Strickland*, 466 U.S. at 689).

Petitioner next alleges that his attorney failed to present a defense. As noted, however, counsel in fact presented a defense to the jury. That defense was that petitioner, while a member of the gang, was not involved in a drug conspiracy. Given the videotaped recordings of his participation in gang meetings, that was the only plausible defense available

to petitioner. The fact that the jury was convinced otherwise does not mean that counsel was ineffective.

Finally, petitioner alleges that his attorney failed to argue that petitioner's offense level should have been reduced based upon his minor role in the offense and the fact that his involvement was not essential to the drug conspiracy. Despite petitioner's assertion to the contrary, his attorney did in fact argue that petitioner was entitled to a minor role adjustment. The court denied that request and counsel unsuccessfully pursued the issue on appeal after sentencing on remand.

> Smith attempts to disturb the district court's finding that he did not play a "minor role" in the conspiracy by arguing (1) that he was not essential to the conspiracy, and (2) that he purchased small amounts of drugs when compared with the amounts purchased by other conspirators. But the district court's statements at both sentencing hearings belie this contention. In explaining that the Vice Lords' distributing 1.5 kilograms during the time he was active in the gang was foreseeable to Smith, the court also rejected Smith's argument that he was a minor participant: "While he was not perhaps as involved in the handling of drugs as some of the other defendants, he is not less culpable than the average participant. His involvement including selling drugs, storing firearms, carrying out violent acts as directed." This echoed the court's conclusion in Smith's pre-*Booker* sentencing hearing.
>
> The district court's conclusion finds ample support in the record. Smith shot a "chronic" - a crack addict - to collect a debt, acted as a lookout for other gang members in an unsuccessful attempt to kill the gang's treasurer for embezzling (the gun jammed), stored weapons for the gang, and devised a new "pat down" procedure for security purposes. His sales may have been less than many of the members, but his involvement did not render him substantially less culpable.

*United States v. Smith*, 239 F. App'x at 169.

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

IV. Conclusion

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

                                          s/ Thomas W. Phillips
                                        United States District Judge